# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| HOLLIS D. HALL, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. CIV-12-267-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| **Defendant.** | ) |

## REPORT AND RECOMMENDATION

The claimant Hollis D. Hall requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he

---

[2] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born February 25, 1961, and was fifty years old at the time of the most recent administrative hearing. (Tr. 1634). He earned a GED, and has worked as a truck mechanic and heavy equipment mechanic. (Tr. 1621, 1634). The claimant alleges that he has been unable to work since May 8, 2002, due to bad back/hips, extreme depression, degenerative disc disease, arthritis, and panic attacks. (Tr. 139).

### Procedural History

On November 22, 2006, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ Richard J. Kallsnick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 15, 2009. (Tr. 8-19). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-10-163-RAW-KEW, and remanded the case for further proceedings. (Tr. 1719-1735). ALJ Trace Baldwin held a second administrative hearing and determined that the claimant was not disabled in a written opinion dated April 13, 2012. (Tr. 1599-1623). The Appeals Council again denied review, so ALJ Baldwin's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (Tr. 1614). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled under Rules 202.21 and 202.14 of the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 1621-1622).

## Review

The claimant contends that the ALJ erred by (i) failing to comply with this Court's earlier remand order, (ii) failing to perform a proper credibility analysis, and (iii) improperly assessing his RFC, particularly as to his treating physicians Dr. Mark Rogow and Dr. W. E. Wood. In support of his first contention, the claimant argues, *inter alia*, that the ALJ erred by failing to find that his depression, anxiety, and chronic obstructive pulmonary disease (COPD) were severe impairments. Additionally, the claimant notes that the ALJ failed to properly address his allegations of pain, and the undersigned Magistrate Judge finds these arguments persuasive.

The ALJ found that the claimant had the severe impairments of degenerative disc disease of the lumbar spine and degenerative disc disease of the cervical spine with associated headaches, as well as the non-severe impairments of amphetamine induced psychotic disorder, amphetamine abuse and dependence, generalized anxiety disorder, and major depressive disorder secondary to physical impairment. (Tr. 1602, 1611). In addition, the ALJ found that the claimant had no work-related limitations arising from his

amphetamine induced psychotic disorder, amphetamine abuse and dependence, generalized anxiety disorder, major depressive disorder secondary to physical impairment, COPD, gastroesophageal reflux disease, hypertension, hyperlipidemia, or temporomandibular joint. Relevant medical records reveal that Dr. Benjamin Benner prepared a letter on March 13, 2000, stating that an MRI revealed evidence of disc degeneration and spinal protrusion at L4-5, and that there was longstanding settling and instability at L5-S1. (Tr. 1567). A June 2000 X-ray revealed disc space narrowing and spondylolisthesis at L5-S1. (Tr. 345). This was confirmed again in October 2002, after the claimant suffered a fall in his bathtub. (Tr. 426). The claimant had numerous visits to various hospitals for his back pain that included requests for medication. In July 2006, the claimant was treated at Sequoyah Memorial Hospital and discharged with a principle diagnosis of severe degenerative arthritis affecting his neck. (Tr. 1480). An August 6, 2007 X-ray revealed moderate degenerative change C4-C7. (Tr. 2072). One month later, an X-ray revealed spondylolysis versus pars defect L5 and grade 2 anterolisthesis L5 on S1 with severe degenerative disc disease. (Tr. 2063). A December 2007 X-ray revealed severe degenerative disc disease L5-S1 and anterolisthesis L5 on S1 with severe neural foraminal stenosis. (Tr. 2039). A February 2008 MRI revealed degenerative changes of the cervical spine with intervertebral disc space narrowing from C4 through C7. (Tr. 581). A neck X-Ray that same month revealed mild to moderate degenerative changes involving the cervical spine without acute fractures or dislocations. (Tr. 539). In light of the claimant's past methamphetamine drug addiction, the claimant's treatment history from various places during the first part of 2008 was compiled and interpreted as drug

seeking behavior. (Tr. 1445-1446). Severe degenerative changes from C4 to C7 were noted in an X-ray on July 11, 2008. (Tr. 1999). In November 2008, the claimant received trigger point injections in his left lower rhomboid muscle due to pain and numbness on his left side. (Tr. 1442). A November 2010 X-ray revealed multilevel mid cervical spine spondylosis with prominent disk osteophyte complexes and endplate osteophytes extend into the spinal canal and flatten the ventral cord, which resulted in a moderate central canal stenosis at the C4-C5, C5-C6, C6-C7 levels, as well as small acute right paramedical disc protrusion C7-T1. (Tr. 1920-1921). In addition, the claimant's treating physicians treated him for, *inter alia*, his pain-inducing impairments. (Tr. 1580-1595, 1890-1915).

At the most recent administrative hearing, the claimant testified that he stopped working in 1999 due to back spasms. (Tr. 1638-1639). He stated he was told in 2000 that he needed back surgery, but that it did not happen because there was no funding for it. (Tr. 1640-1641). He said that he was currently seeing Dr. Wood for his back pain, and that Dr. Wood had given him referrals to a specialist to "get something done," but that Dr. Wood could only give him medication. (Tr. 1642). He also stated that he experiences pain in his neck, shoulder, and left arm, which can be aggravated by sleeping on it or picking up something like a coffee cup. (Tr. 1644). In response to questioning, he stated that he might be able to run a weedeater or a vacuum cleaner for a little while, but that he could not for long periods of time. (Tr. 1645). He stated that he thought he could paint for thirty minutes to an hour. (Tr. 1646).

The ALJ summarized the claimant's hearing testimony and provided a thorough retelling of the lengthy medical evidence. He then found that the medical evidence did not support the claimant's allegations of severity and frequency and that his allegations of "adverse symptomatology [were] just not believable to the extent alleged." He also stated that:

> The claimant may indeed experience some discomfort. The issue, however, is not whether the claimant has pain, but rather the degree of that pain and if, in conjunction with his impairments, it renders him disabled. The objective medical evidence in this case establishes that, contrary to the claimant's allegations of disabling pain, he has exhibited relatively mild symptoms. Severe pain will often result in certain observable manifestations such as loss of weight due to loss of appetite from incessant pain, muscular atrophy due to muscle guarding, the use of assistive devices, prolonged bed rest, or adverse neurological signs. In the present case, no such signs exist. The record fails to demonstrate the presence of any pathological clinical signs, significant medical findings, or any neurological abnormalities that would establish the existence of a pattern of pain of such severity as to prevent the claimant from engaging in, at the very least, the full range of "light" work on a sustained basis.

(Tr. 1621). The ALJ then found that the claimant was not disabled according to "the grids," Medical-Vocational Rules §§ 202.21 and 202.14. (Tr. 1622).

"The grids" are rules promulgated by the Commissioner for determining disability based on a claimant's RFC category, age, education and work experience. *See Channel v. Heckler,* 747 F.2d 577, 579-80 & n.3 (10th Cir. 1984) (per curiam). "An ALJ may not rely conclusively on the grids unless he finds (1) that the claimant has no significant nonexertional impairment, (2) that the claimant can do the full range of work at some RFC level on a daily basis, and (3) that the claimant can perform most of the jobs in that RFC level. Each of these findings must be supported by substantial evidence."

*Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993). Thus, use of the grids is inappropriate when a claimant has a nonexertional impairment, unless the ALJ can support a finding that the nonexertional impairment is insignificant. *Id.* at 1490-91; 20 C.F.R., pt. 404, subpt. P, app. 2, § 200.00(e). If an ALJ cannot rely conclusively on "the grids," he "must cite examples of occupations or jobs the individual can do and provide a statement of the incidence of such work in the region where the individual lives or in several regions of the country." Soc. Sec. Rul. 96-9p, 1996 WL 374185 at *5.

"Pain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson*, 987 F.2d at 1490-91, *citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) and *Gossett v. Bowen*, 862 F.2d 802, 807-08 (10th Cir. 1988). In assessing allegations of pain, an ALJ "must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1375-76 (10th Cir. 1992), *citing Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987). Further, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Thompson*, 987 F.2d at 1490, *citing Frey v. Bowen*, 816 F.2d 508, 516 (10th Cir. 1987).

In this case, there was objective medical evidence that the claimant has the pain-inducing impairments of degenerative disc disease of the lumbar spine and degenerative

disc disease of the cervical spine with associated headaches. The ALJ thus was required to consider his assertions of pain and the extent to which it was disabling. *See Winfrey v. Chater*, 92 F.3d 1017, 1020 (10th Cir. 1996); *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995). The ALJ found that the claimant's pain was not disabling but cited no other evidence for this conclusion aside from the claimant's activities of daily living, and instead reached the boilerplate conclusion that although "[t]he claimant may indeed experience some discomfort," the record supported a finding that the claimant could perform light work. *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir. 2004) ("[B]oilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible."), *citing Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001); *Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008) ("The ALJ's purported pain analysis is improper boilerplate because he merely recited the factors he was supposed to address and did not link his conclusions to the evidence or explain how Mrs. Carpenter's repeated attempts to find relief from pain, and all the drugs she has been prescribed for pain, resulted in a conclusion that she is unlimited in any regard by pain or the side effects from her pain medication.") [citations omitted].

The ALJ further failed to account for the claimant's pain (disabling or otherwise) in formulating his RFC and determining what work, if any, was available given his level of pain. *See, e. g., Harrison v. Shalala*, 28 F.3d 112, 1994 WL 266742, at *5 (10th Cir. 1994) (per curiam) (unpublished table opinion) ("If the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry. The [Commissioner] must show

that jobs exist in the national economy that the claimant may perform *given the level of pain [he] suffers*.") [citation omitted]. This would ordinarily require the opinion of a vocational expert. *See, e. g., id.* at *5.

Because the ALJ failed to properly account for the claimant's pain, the Commissioner's decision is reversed and the case is remanded to the ALJ for further analysis. Upon proper analysis, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 10th day of September, 2013.

*[signature]*
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma